UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DEAN A. HICKMAN, *et al.*, | ) | Case No.: 1:07 CV 1543 |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| FIRST AMERICAN TITLE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant | ) | <u>ORDER</u> |

Plaintiffs Dean A. Hickman and Aimee L. Hickman ("Plaintiffs") filed the above-captioned action against Defendant First American Title Insurance Company ("Defendant"), alleging breach of contract, fraud, conversion, breach of fiduciary duty, breach of good faith, money had and received, and unjust enrichment. (Compl., ECF No. 1, 9-14.) The Complaint also includes class action claims with Plaintiffs seeking to represent all similarly-situated class members. (*Id.*, ECF No. 1, 15.) Currently pending before the court is Plaintiffs' Motion for Class Certification. (ECF No. 51.) For the reasons stated below, Plaintiffs' Motion is denied.

## I. FACTS AND PROCEDURAL HISTORY

### A. Title Insurance/Reissue Rates

The title insurance industry employs a multi-tiered pricing structure. (Compl. ¶ 3, ECF No. 1.) The so-called "Original Rate" is the full price for title insurance. (*Id.*) However, under certain

circumstances, customers who purchase title insurance may be entitled to a significant discount on the Original Rate referred to as the "Reissue Rate." (*Id.*)

Reissue rates are significantly cheaper than full title insurance rates because title insurance companies perform less work in preparing a reissue policy and insure against less risk. (*Id.* ¶ 4.) In a refinancing transaction, the borrower is the same as in the original transaction, and only a short period of time has elapsed between the purchase of the original title insurance policy and the reissue policy. (*Id.*) As a result, title insurers typically rely on the comprehensive title search conducted at the placement of the original policy and spend considerably less time and money conducting an updated title search for placement of a reissue policy. (*Id.*) Additionally, a reissue policy only insures a policyholder for title-related claims that arise from the short period of time between placement of the original policy and the reissue policy. Therefore, a reissue policy insures against less risk than an originally-placed policy. (*Id.*)

### B. Rate Filing Requirement

Ohio law mandates that every title insurer file its proposed rates with the state superintendent of insurance. Ohio Rev. Code § 3935.04(A). Ohio Rev. Code § 3935.04(B) provides that, "[a]n insurer may satisfy its obligations to make such filings by becoming a member of, or a subscriber to, a licensed rating organization which makes such filings." First American meets this statutory obligation by its membership in the Ohio Title Insurance Rating Bureau (the "Rating Bureau"). (Compl., Ex. A, ECF No. 1-1.) The Rating Bureau files a Rate Manual with the Ohio Department of Insurance ("ODI") that is binding on its members, including Defendant. (*Id.*) Defendant's title policy rates, and the requirements for those rates, including the discount rates at

issue in this case, are published in the rate manual. (*Id.*) Section PR-10[1] of the Rate Manual addresses reissue rates for consumers with prior lender's policies and is the basis upon which Plaintiffs' Complaint rests. (*Id.*)

### C. Plaintiffs' Residential Refinancing Transaction

Plaintiffs state that, on or about March 5, 2004, they refinanced the existing mortgage on their home in Elyria, Ohio (the "Refinance Transaction"). (Compl., ECF No. 1, ¶ 29.) In connection with the Refinance Transaction, Plaintiffs paid a premium for the purchase of title insurance from First American. This premium was the full, undiscounted Original Rate. (*Id.* ¶ 30.) Plaintiffs state that "Defendant and/or its agent acted as the settlement agent and/or title insurance agent for the Refinance Transaction." (*Id.*) Plaintiffs allege that, under the rate schedule filed by First American with the Rating Bureau, they qualified to receive the discount Reissue Rate, but Defendant failed to give the discounted Reissue Rate to Plaintiffs or to inform Plaintiffs that they qualified for this rate, resulting in financial harm. (*Id.* ¶ 32.) Plaintiffs further allege that this behavior was not unique to their policy but was conducted against "thousands of similarly situated consumers." (Pl.'s Mot. For Class Cert., ECF No. 51, 7.)

---

[1] PR-10 provides, in pertinent part, the requirement for the "refinance rate":

> When a refinance loan is made to the same borrower on the same land, the following rate will be charged for issuing a policy in connection with the new loan on so much of the amount of the new policy as represents the unpaid principal balance secured by the original loan: provided the Insurer is given a copy of the prior policy, or other information sufficient to enable the Insurer to identify such prior policy upon which reissue is requested, and the amount of the unpaid principal balance secured by the original loan.

Plaintiffs' Complaint alleges the following causes of action: (1) declaratory relief and injunctive relief; (2) breach of contract; (3) fraud; (4) breach of fiduciary duty; (5) conversion; (6) unjust enrichment; (7) breach of good faith and fair dealing; and (8) money had and received. (Compl. ¶¶ 37-73.) The Court previously dismissed the claims for declaratory and injunctive relief, breach of fiduciary duty, conversion, and breach of the duty of good faith and fair dealing. (Order, ECF No. 4.)

## II. LEGAL STANDARD

A court must engage in a "rigorous analysis" of the plaintiffs' ability to meet the requirements of Federal Rule of Civil Procedure 23 before certifying a class. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). To obtain class certification, Plaintiffs must satisfy the requirements of Fed. R. Civ. P. 23(a) commonly known as numerosity, commonality, typicality, and adequacy of representation, and demonstrate that the class fits under one of the three subdivisions of Rule 23(b). *Coleman v. GMAC*, 296 F.3d 443, 446 (6th Cir. 2002). A district court has broad discretion in determining whether to certify a class, within the dictates of Rule 23. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979).

## III. LAW AND ANALYSIS

Plaintiffs seek to certify the following class:

> All persons who (i) paid for a lender's policy of title insurance issued by defendant First American Title Insurance Company in connection with the refinancing of a residential mortgage loan on property located in Ohio that was completed on or after February 2, 2000; (ii) where the subject property previously had been mortgaged within the applicable look-back period; and (iii) paid more than the discounted "reissue" or "refinance" rate for such title insurance.

In support of this petition, Plaintiffs assert that a common question exists among the members of their proposed class as to whether Defendant systematically failed to charge them the Refinance Rate for which they were eligible according to the policy submitted by Defendant to the Rating Bureau. Their theory of liability is predicated upon the proposition that a showing of a prior mortgage is sufficient under PR-10 for a buyer to qualify for the discounted rate on a new lender's title insurance policy. While it is not the job of this court to rule on the merits at this stage, some evaluation of this theory of liability is necessary to determine whether elements of Rule 23 are satisfied. *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982)("Sometimes it may be necessary for a court to probe behind the pleadings before coming to rest on the certification question."); *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978)("[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."(internal citations omitted.))

### A. Rule 23(a)

Under Rule 23(a), a class action may not be certified unless certain preconditions are met. Those preconditions are: (1) the class must be so numerous that joinder of all members is impracticable, (2) there must be questions of law or fact common to the class, (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class, and (4) the representative parties must fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a).

Plaintiffs contend that the members of the potential class number in the tens of thousands. (Pl.'s Mot. For Class Cert., ECF No. 51, 32.) They argue that the class shares a common question as to whether the members of the class "were entitled to the discounted rate under Defendant's filed

rates, and whether they failed to receive that rate as a result of Defendants' systematic wrongdoing." (*Id.*)(citing *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551 (D. Md. 2006)). Plaintiffs further assert that typicality is satisfied because their cause of action arises from the same conduct on the part of Defendant perpetrated against the other members of the potential class and contend that they would pursue their common question using the same legal theory. (*Id.*) Lastly, Plaintiffs assert that they would adequately protect the interests of the class because their interests do not conflict with those of the unnamed class members, and their counsel have "substantial experience in class action." (Pl.'s Mot. for Class Cert., ECF No. 51, 35.)

Neither the numerosity nor the adequacy requirement is in question. However, under Plaintiffs' theory of liability, commonality and typicality cannot be found. To satisfy the commonality requirement, a question of law or fact must be shared by all members of the proposed class. *See Bert v. AK Steel Corp.*, No. 1:02CV467, 2006 U.S. Dist. Lexis 22904 *12 (S.D. Oh. 2006)(noting "the commonality required by Rule 23(a)(2) is 'qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class.'") Plaintiffs acknowledge that not every mortgage written in the State of Ohio is accompanied by a lender's title insurance policy. By defining their class based on mortgages instead of policies, Plaintiffs have included within their potential class some number of homeowners whose mortgages at the time of refinance were not protected by a lender's title insurance policy. These potential class members were not entitled to receive the refinance rate and do not share a common question of law or fact with Plaintiffs.

Furthermore, Plaintiffs' reliance on *Mitchell-Tracey* is unpersuasive. While the insurance rate provisions in *Mitchell-Tracey* mirror those submitted by Defendant, the class certified by that

- 6 -

court was comprised solely of homeowners who had purchased prior title insurance policies. *Id.* at 554. In *Mitchell-Tracey,* there was a common question of law or fact as to whether the plaintiff class had been denied a benefit to which they were each entitled, whereas in this matter it is apparent from Plaintiffs' own admissions that not every member of their potential class was damaged because they were not all entitled to receive the discounted rate. While some members of the proposed class share this common question, it is not common to all, and therefore the commonality requirement is not satisfied. Because the class lacks a common question, named Plaintiffs cannot show that their claims are typical of those that would be brought by other members of the class.

### B. Rule 23(b)(3)

Even if the class shared a common question pursuant to Rule 23(a), Federal Rule of Civil Procedure 23(b)(3) requires that the issues of law or fact common to the class predominate over any individualized considerations and proof that the class method is the superior means of litigating the controversy. Defendant maintains that there are not common questions of fact or law and separately contends that any finding of commonality does not predominate over the highly individualized analyses required to ascertain whether each member of the proposed class had a prior title insurance policy. Plaintiffs contend that the common question of Defendant's liability for overcharging the members of the class predominates over any individualized findings as to which members of the class are legally entitled to the discounted rate.

The Judges on this court have specifically addressed the predominance issue under the same Title Insurance Ratings Manual at issue here and under virtually identical sets of facts. *See Chesner v. Stewart Title Ins. Co.*, No. 1:06CV476, 2009 U.S. Dist. LEXIS 22453 (N.D. Oh., Jan. 9, 2009); *Randleman v. Fidelity Natl Title Ins. Co.*, 264 F.R.D. 298 (N.D. Oh. 2009); *Macula v. Lawyers Title*

*Ins. Corp.*, 264 F.R.D. 307, 311 (N.D. Oh. 2009). In these cases, as here, Plaintiffs attempted to assert a claim for class-wide liability based on the theory that knowledge of a prior mortgage is sufficient "other information" to qualify an applicant for a new policy of lender's title insurance to qualify for the discounted Refinance Rate. *Chesner*, 2009 U.S. Dist. LEXIS 22453; *Randleman*, 264 F.R.D. 298; *Macula*, 264 F.R.D. 307. In *Chesner*, the court found the prior mortgage argument not to be well-taken. *Chesner*, 2009 U.S. Dist. LEXIS 22453 at *26. The court noted:

> The language of the Rate Manual simply cannot be read to exclude the requirement of an actual prior mortgage and substitute in its stead the mere existence of a prior mortgage... the "other information" is inextricably tethered to the requirement that it "enable the Insurer to identify the prior policy. Thus, whatever forms the "other information" might take, it must lead eventually to an actual prior policy.

*Id.* at *23. Furthermore, Plaintiff's argument that the court should apply the reasoning set forth in the class certification order in *Randleman* instead of the reasoning set forth in the *Chesner* class decertification is moot. Since the drafting of the briefs in this case, the court reversed its prior decision in *Randleman* and decertified the class, adopting the rationale put forth in *Chesner*. *Randleman*, 264 F.R.D. at 303. Relying on the rationale in *Chesner*, the court in *Randleman* concluded "any presumption that an institutional mortgage was insured by a title policy is irrelevant. . . Because an individualized inquiry is required to determine whether each claimant is entitled to the discounted rate, individual issues predominate." *Macula*, 264 F.R.D. at 311.

Following the precedent set forth in *Chesner*, *Randleman, and Macula*, this court finds that the class as defined is overly broad. By defining the class as those persons who had prior mortgages and paid a rate greater than the Refinance Rate, the potential class necessarily includes persons who did not receive the discount rate because they were not entitled to receive it. Anything short of such a highly individualized analysis would result in many members of the class receiving a refund to which they were not entitled. *Randleman*, 264 F.R.D. at 304. The necessity of such an individual

analysis demonstrates that the common questions of fact or law do not predominate in this matter and therefore class certification is improper.

## IV. CONCLUSION

Plaintiffs have failed to show that a common question of law or fact predominates over the highly individualized questions posed by the claims asserted. Because the question affecting the individual members of the proposed class, whether those individuals possessed a qualifying lender's title insurance policy, overshadows any common questions as to Defendant's administration of the discount policy, this class cannot be certified. The court hereby denies Plaintiff's Motion for Class Certification (ECF No. 51).

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
CHIEF JUDGE
UNITED STATES DISTRICT COURT

August 5, 2010